[Civ. No. 6008. Fourth Dist. Mar. 17, 1960.]

FRED KNIGHT, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

VIOLA TOUCHSTONE et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

ARTHUR WESLEY CURRIER, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellants.

Robert H. Gerdes, John J. Briare and Mack, Bianco, King & Eyherabide, D. Bianco and Henry C. Mack for Respondents.

COUGHLIN, J.—This is an appeal from a judgment of dismissal for want of prosecution made pursuant to section 583 of the Code of Civil Procedure.

The above entitled actions were consolidated for trial. The complaint in the Knight case, i.e., *Fred Knight, Plaintiff* v. *Pacific Gas and Electric Company (a Corporation), Defendant,* was filed on December 8, 1954, and the complaints in the other cases were filed shortly thereafter. Recovery of damages was sought on account of serious injuries and death resulting from an accident which occurred about a year previously, i.e., December 21, 1953, when the mast of well pulling equipment, which was being used as a hoist, came in contact with an electric power line of the defendant corporation. The plaintiffs alleged that the defendant negligently maintained the power line at an improper height without adequate warning.

The record contains only the complaint in the Knight case. It was signed by Burton J. Goldstein on behalf of Goldstein, Barceloux and Goldstein, as attorneys for the plaintiff. The letter of transmittal requesting filing was signed by Burton J. Goldstein.

The defendant's answer to this complaint was filed on January 13, 1955. The record substantiates the assumption that its answers to the other complaints were filed contemporaneously. Shortly thereafter Burton J. Goldstein, by letter, asked the county clerk to advise how soon after the filing of a memorandum to set a jury case would be set. In reply, the county clerk advised that if a memorandum to set were filed forthwith the case would be heard in July. The memorandum was filed; the case was set for May 31, 1955; and plaintiffs' attorneys were advised of this fact by letter dated March 10, 1955. Thereupon J. Oscar Goldstein, father of Burton J. Goldstein, and another member of the firm, wrote the clerk that the May 31st date was wholly unsatisfactory and asked for a setting in October. As a consequence this trial date was vacated and the case was set for October 3, 1955.

On May 25, 1955, the defendant noticed a motion to consolidate all of the cases. The hearing thereon was set for April 4th. Contemporaneously defendant noticed the taking of depositions of the plaintiffs. Thereafter, at the request of the attorneys for plaintiffs, by written stipulation, the hearing on

this motion and the taking of these depositions was continued, in turn, to May 16, to June 27, to July 25, to September 19. The stipulation of continuance to the latter date provided, ". . . this is the last extension of time to be granted and the hearing on the motion and the taking of the depositions will proceed on September 19, 1955 in the absence of plaintiffs' attorneys if they are not present at the time and place agreed upon." Burton J. Goldstein signed this stipulation on behalf of the attorneys for plaintiffs. The motion to consolidate was heard and granted on September 19, 1955. Burton J. Goldstein appeared on behalf of the plaintiffs contesting the motion.

The trial date of October 3, 1955, had been vacated on July 19, 1955 and the cases dropped to the foot of the civil active list.

On September 19, 1956, the county clerk advised plaintiffs' attorneys by letter that the cases had been set for trial on November 13, 1956. Forthwith Burton J. Goldstein replied, expressing his surprise and stating his understanding that the cases would simply await the filing of a memorandum to set which he proposed to do shortly, so that they might come to trial "next winter or spring, after our calendar has cleared somewhat," and advising that he would be unable to try the cases on the date set because of an extremely crowded trial calendar. Thereupon the parties executed a stipulation that the November 13th trial date be vacated and the cases "dropped to the foot of the calendar, to take their course thereon for further setting," to be "reset by the Court . . . when said cases have again reached their turn on the trial calendar."

Nothing further appears to have been done until April 23, 1957, when the cases were set for a pretrial conference on May 24th of that year. Upon the representation that Burton J. Goldstein was engaged in a trial, and with the consent of the attorneys for defendant, this pretrial date was vacated. Thereafter another pretrial conference was set for November 8th of the same year, but at the request of Burton J. Goldstein, with the consent of the attorneys for defendant, it did not take place. On November 12, 1957, the clerk set a third pretrial conference for January 15, 1958. Again, at the request of Burton J. Goldstein, with the consent of the attorneys for the defendant, this date was vacated. On that date, however, the court made its order that the causes would be dropped from the civil active list to be reset for pretrial upon the filing of a new memorandum to set.

By letter dated February 17, 1958, one of the attorneys for defendant wrote his cocounsel suggesting that Mr. Goldstein be given until March 1, 1958, to "take some action to restore these cases to the calendar" otherwise to proceed with a proposed motion to dismiss. A copy of this letter was mailed to Mr. Goldstein who replied with a telephone conversation, but took no action as suggested. Thereupon, defendants moved to dismiss for want of prosecution. At the request of the attorneys for plaintiffs the hearing on this motion was continued from March 17 to March 24, to April 21, to May 5, at which time the matter was heard and taken under submission. Two days later, by letter dated May 7, 1958, Mr. Goldstein requested the filing of an enclosed memorandum to set. On June 27, 1958, after the filing of additional affidavits and briefs by both parties, the court made its order granting the motion to dismiss the actions.

The time elapsing between filing of the Knight complaint and the notice of motion to dismiss was three years, two months and twenty-four days, and between the date of the accident and such motion was four years, two months and eleven days.

The attorneys for plaintiffs offered as an excuse for this delay the press of firm business, the need for extensive investigation, the death of J. Oscar Goldstein on December 12, 1955, and the illness of Burton J. Goldstein, attributed to a duodenal ulcer, during the period May 24, 1957, to March 4, 1958. The attorneys for defendant countered with the claim that there were other members of the plaintiffs' firm of attorneys; that J. Oscar Goldstein was not in charge of these cases; and that Burton J. Goldstein had tried other cases during his illness. The affidavits before the court would support inferences pro and con upon these respective contentions.

■■ On "appeal from an order granted on a motion based on affidavits and which involves the determination of a question of fact, if there is any conflict therein, those facts favoring the respondents are accepted by the reviewing court as true, and since all intendments are in favor of the ruling of the lower court, the affidavits in behalf of the successful party are deemed not only to establish the facts directly stated therein, but all facts reasonably to be inferred from those stated." (*Ruby* v. *Wellington,* 162 Cal.App.2d 132, 135 [327 P.2d 586] ; *Alvak Enterprises* v. *Phillips,* 167 Cal.App.2d 69, 77 [334 P.2d 148, 338 P.2d 582] ; *Griffith Co.* v. *San*

*Diego College for Women,* 45 Cal.2d 501, 507 [289 P.2d 476, 47 A.L.R.2d 1349].)

Section 583 of the Code of Civil Procedure authorizes the court, in its discretion, to dismiss an action for want of prosecution when the plaintiff has failed to bring such action to trial within two years after it has been filed. ▋ The discretion in question is the discretion of the trial court; not of the appellate court; "and will be disturbed only in cases of manifest abuse." (*Hayashi* v. *Lorenz,* 42 Cal.2d 848, 851 [271 P.2d 18]; *Gunner* v. *Van Ness Garage,* 150 Cal.App.2d 345, 347 [310 P.2d 32].) ▋ On the other hand, the exercise of the discretion vested in a trial court is subject to review in the light of well established principles; it is a legal discretion, not a capricious or arbitrary one, but a discretion "to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Bailey* v. *Taaffe,* 29 Cal. 422, 424.) This rule has been adopted and applied in proceedings which involve the dismissal of an action for want of prosecution. (*Ferris* v. *Wood,* 144 Cal. 426, 428 [77 P. 1037]; *Raggio* v. *Southern Pacific Co.,* 181 Cal. 472, 475 [185 P. 171]; *Jepsen* v. *Sherry,* 99 Cal.App.2d 119, 121 [220 P.2d 819, 822].)

There are other well established rules which assist an appellate court in arriving at a decision on such a review. ▋ It has been stated frequently that "the duty rests upon a plaintiff at every stage of the proceeding to use due diligence to expedite his case to a final determination." (*Raggio* v. *Southern Pacific Co.,* 181 Cal. 472, 475 [185 P. 171]; *St. Clair* v. *Brix,* 89 Cal.App. 94, 99 [264 P. 307]; *Simonini* v. *Jay Dee Leather Products Co.,* 85 Cal.App.2d 265, 269 [193 P.2d 53]), "and no affirmative duty to do more than meet the plaintiff step by step is cast on the defendant." (*Gunner* v. *Van Ness Garage,* 150 Cal.App.2d 345, 347 [310 P.2d 32].) ▋ The statutory period having elapsed without trial, and no justifiable excuse for failure to prosecute being present, a court acts within its discretion in dismissing the action. (*Sawyer* v. *Palmer,* 121 Cal.App.2d 370 [263 P.2d 475].) ▋ A defendant is not required to support a motion to dismiss under the statute with an affirmative showing of prejudice. Prejudice from unreasonable delay is presumed. (*Welden* v. *Davis Auto Exchange,* 153 Cal.App.2d 515, 521 [315 P.2d 33]; *Lieb* v. *Lager,* 9 Cal.App.2d 324, 326 [49 P.2d 886]; *Gray* v. *Times-Mirror Co.,* 11 Cal.App.

155, 163 [104 P. 481].) "Each case must be decided on its own peculiar features and facts." (*Jepsen* v. *Sherry*, 99 Cal. App.2d 119, 121 [220 P.2d 819, 822]; *First National Bank* v. *Nason*, 115 Cal. 626, 628 [47 P. 595].)

Applying the foregoing principles to the case at bar it may not be said, as a matter of law, that the trial court abused its discretion in determining that the excuses offered by the plaintiffs for their delay were justified. Orders directing a dismissal have been sustained on appeal in cases where the claimed excuses for delay were the pressure of business, sickness, or death of counsel or of the parties. (*Goldman* v. *Palmtag*, 169 Cal. 170 [146 P. 429]; *Smith* v. *Wiget*, 75 Cal.App.2d 591, 594 [171 P.2d 563]; *Elmhurst Packers* v. *Superior Court*, 46 Cal.App.2d 648, 651 [116 P.2d 487]; *Barry* v. *Learner*, 113 Cal.App. 651, 655 [299 P. 82].) On the other hand, these factors have been considered as a part of an overall situation establishing excusable cause for the delay and requiring reversal of an order of dismissal. (*Ordway* v. *Arata*, 150 Cal.App.2d 71 [309 P.2d 919].) It must be concluded that the existence of these factors alone is not determinative of the issue.

In the case at bar the court may have concluded that the death of J. Oscar Goldstein was not an excusing factor because his participation in the prosecution was incidental; that the illness of Burton J. Goldstein was not a justifiable excuse because, as the affidavits showed, he was engaged in other trials at the time of this alleged impediment; and that the pressure of business from the extent of the investigation required by these cases, and the handling of other cases in the office could have been alleviated by a distribution of the work among other members of the firm, the record showing that, at one time, there appeared to be six such members.

The plaintiffs claim that the defendant is estopped to contend that the delay in question was prejudicial to it, or to cause a dismissal of the action on account thereof, because the attorneys for defendant stipulated to the many continuances heretofore noted. A stipulation continuing a case for trial to a specified date precludes a defendant from obtaining a dismissal prior to that date (*City of Los Angeles* v. *Superior Court*, 185 Cal. 405, 408 [197 P. 79]), but does not require the court to conclude, as a matter of law, that the defendant thereby waived or was estopped to assert a right to obtain a dismissal thereafter. (*Miller & Lux Inc.* v. *Superior Court*, 192 Cal. 333 [219 P. 1006]; *City of Los Angeles*

v. *Superior Court,* 185 Cal. 405, 408 [197 P. 79] ; *Barry* v. *Learner,* 113 Cal.App. 651, 655 [299 P. 82].) The reasonableness of this rule is well illustrated by the court in *City of Los Angeles* v. *Superior Court,* 185 Cal. 405, 410 [197 P. 79], in observing that "no one would think of construing a stipulation extending the time of a party to plead or serve notice, or to perform any other act, as a waiver of the right to its enforcement beyond the time expressly stipulated."

Nevertheless plaintiffs claim that they were lulled into a false sense of security by these stipulations; that their attorney was led to believe it would not be necessary to assign the cases to other counsel; and that, in substance, there was a representation that the defendant would not seek a dismissal for want of prosecution. The findings implied in the trial court's order controvert these contentions. The stipulations extending the time for hearing the motion to consolidate and for the taking of depositions, even though assented to by the defendant, were requested by the plaintiffs. The most that these stipulations accomplished was to relieve the plaintiffs from appearing in court on the hearings in question or from taking the depositions at the times set. Except for them the defendant's attorney would have proceeded even though plaintiffs' attorneys did not appear. The last of such stipulations expressly told the plaintiffs that if they did not appear on the date then agreed upon the defendant would proceed without them. If the plaintiffs were requesting more than a continuance of such hearing or the taking of depositions, in all fairness to the defendant, their proposed stipulation should have indicated such. If the stipulation was intended to include a waiver of their lack of diligence this intention should have been indicated. The written stipulation of October 10, 1956, agreeing that the trial date of November 13, 1956, might be vacated and that the cases should be dropped to the foot of the calendar to be reset when they "have again reached their turn on the trial calendar," did not constitute a representation that the defendant would not hold the plaintiffs to a diligent prosecution of these cases. Again, this stipulation was requested by the plaintiffs' attorneys who, in a letter to the county clerk, had expressed surprise that the cases were set without the filing of a memorandum requesting the same. The subsequent stipulations, each requested by the plaintiffs, continuing the pretrial hearings of May 24, 1957, November 8, 1957, and January 15, 1958, the trial court could have concluded, constituted no more

than a waiver by defendant's attorney of its right to proceed in the absence of plaintiffs' attorneys. It is noteworthy that, after the last pretrial conference did not take place as scheduled, the court, on its own motion, made an order setting the cases off calendar. All of the continuances were motivated by the plaintiffs; there was no expressed representation that the defendant would not invoke the demand of the law that these cases be diligently prosecuted; and the trial court acted within its authority in concluding that there was no implied representation to this effect. The delay in these cases could not be attributed to any overreaching, inducement, request or benefit of the defendant.

Plaintiffs rely on *Rio Vista Min. Co.* v. *Superior Court*, 187 Cal. 1 [200 P. 616], *Smith* v. *Bear Valley etc. Co.*, 26 Cal.2d 590 [160 P.2d 1], and *Woley* v. *Turkus*, 51 Cal.2d 402 [334 P.2d 12], in support of their position. The factual situations or the principles set forth therein are neither analogous nor applicable to the facts in the case at bar.

The plaintiffs claim that substantial justice was not effected by the order of dismissal and for this reason it should be reversed. Great reliance is placed on the cases of *Jepsen* v. *Sherry*, 99 Cal.App.2d 119 [220 P.2d 819, 822], and *Ordway* v. *Arata*, 150 Cal.App.2d 71 [309 P.2d 919]. It is argued that the death and serious injury resulting from the accident described in the complaints together with the extensive amount of damages claimed, when considered in connection with the lack of an affirmative showing of prejudice to the defendant attributable to the delay, establish that substantial justice was defeated rather than subserved. Both of the cited cases reiterate the principle that, in reviewing the action of a trial court upon a motion to dismiss for want of prosecution no hard and fast rule can be laid down as to what constitutes an abuse of discretion, and each case must be judged upon its own facts. Adherence to this principle disperses the controlling effect of these cases. In both of the cited cases influencing factors included an apparent admission of the obligation sued upon, the relationship between the parties, and attempts at settlement or compromise, as well as disruptions resulting from a variety of circumstances. The issue of liability in the case at bar was highly controversial. It may not be said, as a matter of law, that this dismissal proceeding was used to defeat payment of an acknowledged obligation rather than to promote the speedy disposition of litigation respecting a controversial obligation.

■ The "enactment to prevent unlimited postponement of trials is to an extent one of public policy as well as of private concern to the litigants." (*City of Los Angeles* v. *Superior Court,* 185 Cal. 405, 410 [197 P. 97] ; *St. Clair* v. *Brix,* 89 Cal.App. 94, 100 [264 P. 307].) ■ Plaintiffs' right to substantial justice must be measured in the light of the right of all litigants and the orderly procedure prescribed for the benefit of all. The trial court was entitled to conclude that they were dilatory and that they lost their right to present their case on the merits because of their own conduct. The law imposed upon them the duty to proceed with diligence, whereas, the record supports the conclusion that they delayed a year after the accident before filing their complaints; that the defendant answered forthwith; that their requests for continuances respecting the hearing upon the motion to consolidate and to take depositions caused further delay; that subsequent neglect resulted in additional delay; that by requesting continuances of the trial date in November, 1956, and for continuances respecting the pretrial hearings they caused more delay; that they did not heed the defendant's declared intention to move for a dismissal if some action was not taken "to restore these cases to the calendar," which would have required only the filing of a memorandum to set, but instead offered telephonic excuses for delay; and that no such memorandum to set was filed until almost three months later and after the hearing on the motion to dismiss, which had been postponed on three occasions at their request. Judged by this course of conduct it was not unreasonable for the trial court to conclude that the plaintiffs' proffered excuses were neither justifiable nor the cause of their delay. We conclude that the order of dismissal was not the result of an abuse of discretion.

Judgment affirmed.

Shepard, J., concurred.

Griffin, P. J., deeming himself disqualified, did not participate in this decision.

A petition for a rehearing was denied April 11, 1960, and appellants' petition for a hearing by the Supreme Court was denied May 11, 1960. Peters, J., was of the opinion that the petition should be granted.